# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Xavier Escobedo,

    Plaintiff,

v.

Construction Laborers' Education,
Training and Apprenticeship Fund of
Minnesota and North Dakota,

    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-3653 ADM/JJK

_____

Joshua R. Williams, Esq., Law Office of Joshua R. Williams, PLLC, Minneapolis, MN, on behalf of Plaintiff.

Michael Joliat, Esq., Pamela Hodges Nissen, Esq., and Susan M. Thill, Esq., Anderson, Helgen, Davis & Nissen, LLC, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On September 18, 2012, the undersigned United States District Judge heard oral argument on Defendant Construction Laborers' Education, Training and Apprenticeship Fund of Minnesota and North Dakota's (the "Fund") Motion for Summary Judgment [Docket No. 9]. For the reasons stated below, the Fund's Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

The Fund was established in 1989 by an Agreement and Declaration of Trust, with the stated purpose of operating a "school and education, training, and apprenticeship programs . . . ." Beyer Aff. [Docket No. 12] Ex. 1 § 2.2. The Fund operates a 44,000 square foot facility situated on a twenty-one acre site in Lino Lakes, Minnesota. Beyer Aff. ¶ 4(a). The Fund employs

_____

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

approximately seven teachers who instruct over 5,000 students annually. Id. ¶ 4(c). The curriculum consists of over forty courses — such as asbestos remediation, hazardous waste, mine safety and OSHA courses — which are required for workers in those fields. Id. ¶¶ 4(c–d). Many of the courses taught by the Fund require a government agency's authorization to teach. Id. ¶ 4(d).

The Fund has nine licenses from the Minnesota Department of Health to teach asbestos and lead courses, three licenses from the Wisconsin Department of Health to teach asbestos training, one license from the North Dakota Department of Health to teach asbestos training, and one license from the United States Department of Labor to teach mine safety. Id. ¶ 4(g). The Fund's curriculum is largely provided by the Laborers International Union of North America Training Fund ("LIUNA"), an international organization providing curriculum to seventy schools across the United States and Canada. Beyer Aff. ¶ 4(e). The Fund also obtains training materials from the federal government. Id.

Plaintiff Xavier Escobedo ("Escobedo") was hired in 2004 and primarily taught courses at the Fund's Lino Lakes facility (the "Fund facility"). Nissen Aff. [Docket No. 13] Ex. 1 ("Escobedo Dep.") at 32:15–33:19. Escobedo received salary and benefits of $80,000 annually for teaching courses. Beyer Aff. ¶ 4(f). He taught "hands-on" education in the site's training bays and in a classroom, and he also developed and adapted lesson plans and course materials. Escobedo Dep. 34:8-20; 37:20–40:20; 47:5-13. He typically taught four days a week, with one day reserved for course development and preparation. See id. at 79:1-16. The Fund provided Escobedo an office and a computer at the Fund facility. Id. at 38:20-24. Escobedo was certified to teach numerous classes, including asbestos, mine safety, and hazardous waste. See, e.g., id. at 40:5-11; 45:5-8; Beyer Aff. Exs. 5–18.

Escobedo was classified as a salaried teacher exempt from overtime pay requirements. Beyer Aff. ¶ 3. He was not required to log hours and was paid the same weekly salary regardless of the hours worked. Am. Compl. [Docket No. 7] ¶ 4–15. Escobedo alleges that from 2009 through 2011, he occasionally worked more than forty hours a week. Id. He now seeks more than $21,000 in back-pay for overtime hours under the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act ("MFLSA"). Id. at 6.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

#### B. Analysis

Escobedo's Amended Complaint alleges that the Fund violated the FLSA and MFLSA. The Fund denies any liability under either the FLSA or the MFLSA, because it contends that Escobedo was properly classified as an exempt employee and therefore not entitled to overtime pay. These arguments are discussed below.

##### 1. FLSA

Under the FLSA, employers are generally required to pay employees overtime for work

3

in excess of forty hours per week, but they are not required to pay overtime to employees "employed in a bona fide . . . professional capacity." 29 U.S.C. §§ 206, 213. Teachers are a class of employees employed in a professional capacity. 29 C.F.R. § 541.303. The teacher exemption applies to an employee whose "primary duty [is] teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed." 29 C.F.R. § 541.303(a). Examples of exempt teachers include but are not limited to "[r]egular academic teachers; teachers of kindergarten or nursery school pupils; teachers of gifted or disabled children; teachers of skilled and semi-skilled trades and occupations." 29 C.F.R. § 541.303(b).

FLSA exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." In re RBC Dain Rauscher Overtime Litig., 703 F. Supp. 2d 910, 922–23 (D. Minn. 2010) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)); see 5 C.F.R. § 551.202(b). The employer bears the burden of proving an exemption applies. Mitchell v. Ky. Fin. Co., 359 U.S. 290, 291 (1959); cf. 5 C.F.R. § 551.202(c). The employee's actual work activity is a question of fact, but the "question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . ." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

### a. Teacher

The two issues to be decided by this case are (1) whether Escobedo was a teacher and, therefore, an exempt professional employee, and (2) whether the Fund facility was an educational establishment. The first issue is largely uncontested, as Escobedo's memorandum

and oral argument did not address the issue. An employee is a teacher under the FLSA when that person's primary duty is teaching. See 29 C.F.R. § 541.303. Primary duty is defined as "the principal, main, major or most important duty that the employee performs," and this determination is "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700.

Escobedo is a teacher within the purview of the FLSA. In the Amended Complaint, Escobedo admits he was an "instructor." Am. Compl. ¶ 7. Additionally, when recounting his job duties, Escobedo stated he was hired to "teach both in English and Spanish." Escobedo Dep. 32:21-33:2. Additionally, he admitted in his deposition that his primary duty was to impart knowledge to students. Id. at 113:15-114:9. Throughout his deposition, Escobedo repeatedly referred to himself as an instructor and described what he did as teaching. Id. at 26:12, 33:1-2, 41:4, 43:20, 45:7, 50:7, 51:19, 53:16, 79:6. Escobedo taught classes four days a week, with one day reserved for teacher preparation and course development. Id. at 60:11-23, 79:1-6. Further, Escobedo was certified to teach the following courses: mine safety and health, light rail, OSHA 500, OSHA 7600, erosion and stormwater management, OSHA 5600 disaster site worker, asbestos training, general construction. Id. at 45:5-8, 50:6-9, 51:12–54:16. He was also certified as a licensed vocational instructor. Id. at 52:25–53:3. All his admissions, taken together with his certifications and work schedule, establish that Escobedo was a "teacher" under the FLSA.

The sole evidence to the contrary is Escobedo's declaration in which he estimates he performed manual labor about forty to fifty percent of the time while "on the clock," and that in the summer this work could consume up to seventy percent of his time. Escobedo Decl. [Docket No. 15] ¶ 3. This contradictory declaration, however, is insufficient to create a genuine issue of

5

a material fact, given his numerous prior admissions. Indeed, the purpose of summary judgment is to foreclose "the assertion of unfounded claims or the interposition of specious denials or sham defenses." City of St. Joseph, MO v. Sw. Bell Tel., 439 F.3d 468, 475 (8th Cir. 2006) (citation omitted). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 475–76. Under the sham affidavit doctrine, a district court may strike an affidavit which conflicts with deposition testimony and raises only sham issues of material fact. Id. at 476 (citation omitted). Where the affiant attributes the contradictory testimony to confusion at his deposition or the need to explain unclear portions of deposition testimony, the district court is not to strike the affidavit. Id. (citation omitted).

Escobedo's declaration, filed in response to the Fund's Motion for Summary Judgment, is inconsistent with his prior testimony. In his previous deposition testimony, Escobedo stated that he would describe himself primarily as an instructor and that he provided his students new information. Escobedo Dep. 113:15–114:9. Further, he specifically testified he had described essentially all of his duties at the Fund facility in his deposition, in contrast to his recent declaration in which he lists fourteen different manual labor duties not mentioned in his deposition testimony. Compare Escobedo Dep. at 113:5-13 with Escobedo Decl. ¶ 3. Escobedo does not claim that he was confused at his deposition or that portions of that testimony were unclear. For these reasons, Escobedo's declaration is stricken under the sham affidavit doctrine.

Even were this declaration not stricken, it would be insufficient to create a genuine issue of material fact, given the substantial testimony that Escobedo was, in fact, a teacher. The

evidence, including Escobedo's own Amended Complaint and deposition testimony, firmly establishes that he was employed as a teacher and that imparting knowledge to students was his primary duty.

### b. Educational Establishment

The determinative issue in this case is whether the Fund facility is an "educational establishment" under the FLSA. An "educational establishment" is defined as an "elementary or secondary school system, an institution of higher education or other educational institution." 29 C.F.R. § 541.204(b). The "other educational institution" category has been further explained by the Department of Labor, which has clarified several factors relevant to determining if post-secondary career programs qualify: (1) "whether the school is licensed by a state agency responsible for the state's educational system"; or (2) whether the school is "accredited by a nationally recognized organization for career schools." Id. Educational programs are not required to be licensed by a state agency or accredited by a nationally recognized career school organization, as those relevant factors are neither exhaustive nor required under 29 C.F.R. § 541.204(b). The language of that FLSA regulation is permissive — "[f]actors relevant in determining whether post-secondary career programs are educational institutions **include** . . . ." Id. (emphasis added).

### i. Licensure

The Fund has established the first relevant factor by proving it receiving the required licenses from the appropriate state agency. Escobedo argues that the sole state agency responsible for the Minnesota's education system is the Minnesota Department of Education ("MDE"), and because the Fund is not licensed by the MDE, it does not meet this FLSA factor.

This argument is unsustainable for several reasons. First, the FLSA expressly lists examples of exempt teachers, including "teachers of skilled and semi-skilled trades and occupations," "teachers engaged in automobile driving instruction," "aircraft flight instructors," and "vocal or instrumental music instructors." 29 C.F.R. § 541.303(b). The inclusion of these vocational and non-academic instructor examples "support[s] a broader view of 'teacher' . . ., since few, if any, elementary or secondary schools employ flight instructors." Wilks v. D.C., 721 F. Supp. 1383, 1385 (D. D.C. 1989). Logically, then, the institutions training these exempt teachers must be educational institutions.

Second, flight, driving, music, and trade schools are not the sort of educational institutions that would necessarily be licensed by a state's department of education. See, e.g., Opinion Letter Fair Labor Stds. Act, 2004 WL 2146934, at *1–2 (Dep't of Labor June 2, 2004) (determining that air traffic control instructors certified and licensed by the Federal Aviation Administration satisfy the FLSA "teachers exemption"); Opinion Letter Fair Labor Stds. Act, 2008 WL 4906284, at *1–2 (Dep't of Labor Oct. 1, 2008) (finding teachers exempt where school accredited by national cosmetology school accreditation commission and where teachers licensed by State Board of Cosmetology as instructors); Minn. Stat. § 155A.30 (demonstrating that the Minnesota Board of Cosmetology licenses cosmetology schools).

The state agency responsible for the state's education system, therefore, is not a single monolithic entity as Escobedo proposes, but rather it varies depending on the subject matter. This is evident from the language used in FLSA, as the factor is "whether the school is licensed by **a** state agency responsible for the state's educational system," 29 C.F.R. § 541.204(b), not "**the** state agency." The Minnesota, Wisconsin, and North Dakota Departments of Health have

licensed the Fund to teach thirteen courses on health-related trade skills such as asbestos and lead worker training, while the United States Department of Labor has licensed the Fund to teach a mine safety training course. Beyer Aff. ¶ 4(g). These are the entities responsible for licensing individuals and training facilities to teach trade skills. For example, asbestos certifications are issued by the Minnesota Department of Health, which also governs the license and certificate requirements and the necessary training. Minn. Stat. §§ 326.71, 326.78. The Minnesota Department of Education is not the entity appropriate for licensing training and education on workplace safety issues. Therefore, the Fund has received the necessary certifications from the appropriate state agency responsible for the state's educational system on these subject areas. Accordingly, this factor weighs in favor of finding the Fund an educational institution.

### ii. Accreditation

The Fund has not established the second relevant 29 C.F.R. § 541.204(b) factor because it is not accredited by a nationally recognized accrediting organization for career schools. The Fund's curriculum is accredited by LIUNA, and its curriculum is approved by the International Accreditation Service and the American Council of Education. Beyer Aff. ¶ 4(e). However, the Fund facility is not accredited by a national organization; only its curriculum is accredited. Neither party provided evidence showing that curriculum accreditation is the same as organizational accreditation. Given the dearth of case law regarding the sufficiency of curriculum accreditation, as opposed to school accreditation, it cannot be adjudged that the Fund meets this FLSA factor.

### iii. Other Factors

These two 29 C.F.R. § 541.204(b) factors — accreditation and licensure — are not

exhaustive, as courts have found an entity to constitute an "educational institution" even when that institution was neither licensed nor accredited. See, e.g., Wilks, 721 F. Supp. at 1386 (holding that an educational program for prisoners was an "educational institution" under the FLSA because it was "essentially a school"). Other factors courts have considered to be relevant in determining whether an organization is essentially a school are: (1) the title of employees; (2) the certifications required of teachers; (3) the formality of courses; (4) the granting of certificates or degrees; (5) the organization's charter; and (6) the teacher's involvement in organizing, communicating and delivering curriculum. See id.; Muller v. Am. Mgmt. Assoc. Int'l, 368 F. Supp. 2d 1166, 1175–76 (D. Kan. 2004); Opinion Letter Fair Labor Stds. Act, 2006 WL 3406601, at *2–3 (Dep't of Labor Oct. 26, 2006). While no distinction is made between nonprofit and for-profit schools, 29 C.F.R. § 541.204(b), organizations "organized and operated primarily as businesses" do not qualify as "educational institutions." Stallings v. Int'l School of Driving, Nos. C-70-1718, C-71-1209, 1972 WL 970, at *2 (N.D. Cal. 1972); compare Muller, 368 F. Supp. 2d at 1175 (finding organization an "educational institution" in part because it was chartered to be "organized and operated exclusively for educational purposes, and no part of its earning or net income shall inure to the benefit of any individual") and Wilks, 721 F. Supp. at 1386 (basing its determination of an "educational institution" partly because instructors were "full-time professional educators, as opposed to, for example, corporate computer operators who spend part of their time 'teaching' other employees how to use office computers") with Hashop v. Rockwell Space Operations Co., 867 F. Supp. 1287, 1295 (S.D. Tex. 1994) (finding no teacher exemption where large, for-profit corporation engaged in aerospace industry provided instruction to new employees through on-the-job training and workplace simulations).

Analyzed under these factors, the Fund is an "educational institution." The Fund was chartered for the purpose of operating a "school and education, training, and apprenticeship programs." Beyer Aff. Ex. 1 § 2.2(a). The Fund offers extensive skilled trade courses, courses which result in certificates required to engage in that occupation. Beyer Aff. ¶¶ 4(c–d). Fourteen Fund courses are licensed by state governmental agencies, and the Fund's curriculum is obtained from LIUNA and the government. Id. ¶ 4(g). The Fund's entire Lino Lakes facility is dedicated to education. Id. ¶ 4(c). Teachers are involved in course development as well as delivering course material — Escobedo, for instance, developed several courses and taught in both a classroom and through hands-on training. Escobedo Dep. 34:12-35:4, 38:25–40:20. Fund employees are labeled "instructors" and they are required to obtain the necessary training and certificates to teach their various courses. See id. at 26:2-25, 32:15-20. The Fund courses are administered like school courses, lasting several weeks, often requiring prerequisite courses, and culminating with an assessment or examination. See Beyer Aff. Ex. 3. While the Fund facility is not a school in the traditional sense, all these factors demonstrate that it is "essentially a school" and therefore qualifies as an educational institution.

Notwithstanding that it is not an accredited institution, the Fund qualifies as an educational institution because it is properly licensed and because it meets many other factors courts have utilized in similar FLSA cases. Because the Fund is an educational institution, Escobedo was a teacher in an educational establishment and was properly exempted from overtime pay under the FLSA teacher exemption.

### 2. MFLSA

Escobedo also claims back-pay under the MFLSA, which generally requires employees

to be paid overtime for work in excess of forty-eight hours a week. Minn. Stat. § 177.25. Professional employees, however, are exempt employees under the MFLSA. Minn. Stat. § 177.23, subd. 7(6). Professional employees are those employees who receive at least $250 in weekly salary, "perform[] work as a teacher in the activity of imparting knowledge," and "consistently exercise[] discretion and judgment." Minn. R. § 5200.0210, subpart 1.

While the MFLSA teacher exemption was once identical to that in the FLSA, the FLSA teacher exemption no longer requires teachers to meet a minimum salary requirement or to establish that their position required the exercise of discretion and judgment. See 29 C.F.R. § 541.303(d). Courts applying the previous version of the FLSA have found that the discretionary decision requirement is satisfied by a teacher, because the job, "by its very nature, [requires] exercising discretion and judgment." Ramos v. Lee Cnty. Sch. Bd., No. 2:04CV308, 2005 WL 2405832, at *5 (M.D. Fl. Sept. 29, 2005) (citation omitted). Although the FLSA no longer requires a teacher to establish that the occupation requires the exercise of discretion, the MFLSA has not been so amended and therefore still requires such a showing. See generally 17 Minn. Practice, Emp't Law & Practice § 5:20 (Stephen F. Befort ed., 3d ed. 2011).

Escobedo provides no distinct arguments in support of his MFLSA claim, stating simply that his FLSA arguments apply to his MFLSA claims as well. Mem. in Response to Def.'s Mot. for Summ. J. [Docket No. 14] 3 n.1. Because the MFLSA requires different elements than the FLSA, this Court must determine whether Escobedo's MFLSA claim also warrants dismissal. Escobedo was paid more than $250 in weekly salary, with an annual salary of $80,000. Beyer Aff. ¶ 4(f). As previously discussed, Escobedo was a teacher engaged in the act of imparting knowledge.

Further, in his capacity as an instructor at the Fund facility, Escobedo consistently exercised discretion and judgment. Escobedo modified and changed the curriculum and training materials to fit his particular classes. Escobedo Dep. 37:8–38:19. Additionally, Escobedo created curricula for several courses himself. Id. at 38:25–39:7. Escobedo also independently taught some classes in Spanish, and none of his supervisors could speak Spanish. Beyer Aff. ¶ 4(h). As a classroom instructor who taught classes independently and who adapted lesson plans for his students, Escobedo exercised the necessary discretion and judgment. He therefore falls under the MFLSA professional employee exemption. Accordingly, Escobedo is not entitled to overtime back-pay under the MFLSA.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment [Docket No. 9] is **GRANTED**; and

2. Plaintiff's Amended Complaint [Docket No. 7] is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 11, 2012.